SMITH, Respondent, vs. BENJAMIN, Appellant.

*April 10—May 6, 1952.*

For the appellant there was a brief by *Martin L. Fugina* and *Marvin L. Fugina,* both of Fountain City, attorneys, and *Fugina, Kostner, Quinn & Ward* of Arcadia of counsel, and oral argument by *Martin L. Fugina.*

For the respondent there was a brief by *Weinandy & Schlosstein* of Cochrane, and oral argument by *B. H. Schlosstein.*

CURRIE, J. The defendant Benjamin raises the following two questions on this appeal:

(1) Is there credible evidence to sustain the finding of the jury in its special verdict that Hewitt and Komro were not the servants of the plaintiff when they applied the roof on the defendant's barn in 1949? and

(2) That no judgment could rightfully be entered upon the special verdict in this case because of the failure to submit a question in the verdict as required by sec. 270.29, Stats., fixing the amount plaintiff was entitled to recover.

On the question of whether there is credible evidence in the record which would sustain the jury's answer to the question in the special verdict as to whether Hewitt and Komro were the servants of the plaintiff, the evidence must be considered in the light most favorable to sustain the verdict. *Smith v. Koch* (1945), 247 Wis. 551, 20 N. W. (2d) 566. Whether a witness is credible is a question for the determination of the jury, and if there is any credible evidence to support a verdict it will be sustained by this court. *Latta v. Fidelity-Phenix Fire Ins. Co.* (1925), 186 Wis. 116, 202 N. W. 299.

Upon our review of the record it is our conclusion that there is sufficient credible evidence to sustain the finding of the jury that Hewitt and Komro were not the servants or employees of the plaintiff Smith.

Smith had been engaged in the sale of building materials at Pepin, Wisconsin, for a period of nineteen years and during the last twelve of such years his business was solely confined to selling materials and he did no contracting in which labor was supplied. In the spring of 1949, the defendant, Benjamin (who was a farmer residing about thirteen miles from Pepin), had been to see the plaintiff three times

about a roof for Benjamin's barn and Smith had shown Benjamin a sample of aluminum roofing which he was in a position to furnish.

On May 25, 1949, Hewitt and Komro, two young men whom Smith had not previously met, called on Smith and stated that they had had experience doing roofing and were looking for roofing jobs. Smith told them that Benjamin wanted a roof installed and suggested that if they could handle the job that they go and see Benjamin and talk it over with him and it would be up to Benjamin and them as to whether any deal was worked out. Smith then telephoned Benjamin and told him that two men were looking for work and that they were coming to see him and stated, "You can do whatever you want to," meaning thereby that Benjamin could work out whatever deal he wanted to with Hewitt and Komro.

Smith sent samples of aluminum roofing along with Hewitt and Komro when they went to call on Benjamin and suggested that they measure the barn for the amount of roofing required. That evening Hewitt and Komro returned and informed Smith that Benjamin wanted them to do the work. Smith inquired as to what arrangement they had made with Benjamin about pay and they informed Smith that Benjamin had agreed to pay them $1 an hour. Unknown to Smith at the time, Benjamin had also agreed to furnish Hewitt and Komro with two meals per day while they were doing the work.

While Hewitt testified at the trial as a witness for Benjamin, he did make this significant statement in his testimony: "Well, we [Hewitt and Komro] told him [Benjamin] that we were ready to go to work and he said that he had already fixed things up and we were to get a dollar [$1] an hour and he was going to give us our meals." There was further testimony that when Smith and Smith's attorney contacted Hewitt before trial, Hewitt admitted that Komro and he

had been employed by Benjamin and not by Smith, but at the trial Hewitt claimed that Smith was his employer.

Smith testified that he advanced to Hewitt and Komro their pay at a dollar per hour for the work done in laying Benjamin's roof as an accommodation to Benjamin because Hewitt and Komro wished to be covered by Smith's workmen's compensation insurance. On this point Hewitt testified:

"Well, we had been getting six [$6] a square and he [Smith] said that we could work under him so we could be under insurance under him and Mr. Benjamin agreed to it. He said it would be all right in case somebody would get hurt and we would get a dollar [$1] an hour and Mr. Benjamin said he would give us two meals a day."

After the roof had been laid and it leaked during a rainstorm, Benjamin sought out Hewitt and Komro and made complaint to them before making complaint to Smith. The jury in the special verdict found that the work done by Hewitt and Komro in putting the aluminum roof on the Benjamin barn was "unskilfully and negligently done."

Smith testified that he at no time went out to the Benjamin barn during the time that Hewitt and Komro were laying the roof and therefore was not in a position to give them any instructions as to what to do, while Benjamin was present at least part of the time the work was being done. The work was commenced on May 26, 1949, and had been completed early in June, 1949. On August 8, 1949 (which apparently was before either of the parties had contacted an attorney), Smith wrote a letter to Benjamin in which he stated: "We are inclosing the final sales slip covering the material *your men* used on roof caulking, etc." The words *"your men"* had reference to Hewitt and Komro.

Counsel for Benjamin place great stress on the fact that Smith deducted federal income-tax and social-security contributions out of the wages paid Hewitt and Komro and filed

an employer's tax return to the United States treasury on Form SS—1a in which he listed Hewitt and Komro as his employees. While the jury would be entitled to give such evidence great weight, the same was not conclusive as to whether Hewitt and Komro were Smith's or Benjamin's employees, and the jury had the right to accept Smith's explanation that he advanced Hewitt's and Komro's wages as an accommodation to Benjamin.

Sec. 270.29, Stats. 1949, provides that:

"When a verdict is for the plaintiff in an action for the recovery of money, or for the defendant when a counterclaim is established beyond the amount of the plaintiff's claim as established, the jury must assess the amount of the recovery. The jury may also, under direction of the court, assess the amount of the damages where the court orders judgment on the pleadings."

The special verdict submitted to the jury in this case contained no question as to the amount due from Benjamin to Smith but did contain questions with respect to defendant's damages claimed in his counterclaim. No request was made by Benjamin's counsel to the trial court to include a question in the verdict as to the amount due defendant from plaintiff as claimed in plaintiff's complaint. Plaintiff offered in evidence at the trial an itemized statement showing the amount due him for material and moneys advanced for labor to be $1,474.06. Counsel for Benjamin made no objection to the offer of such exhibit in evidence.

There apparently was no issue raised at the trial as to the correctness of Smith's statement of account so received in evidence. While Benjamin contended that Hewitt and Komro were Smith's employees he did not object to the charge of $1 per hour for services included in Smith's statement. In a letter which Benjamin's attorney wrote to Smith under date of August 30, 1949, reference was made to plain-

tiff's claim of $1,474.06, and it was stated that Benjamin was willing to pay $1,435.76, provided Smith promptly put the roof in such permanent condition that it would be leak-proof.

In entering judgment upon the special verdict the trial court deducted $21.14 which plaintiff had charged for workmen's compensation insurance and social security and granted judgment for $1,452.92. The reason for the disallowance of the $21.14 was because the trial court was of the opinion that Smith had not proved any agreement on Benjamin's part to pay for such charges.

In *Nimits v. Motor Transport Co.* (1948), 253 Wis. 362, 364, 34 N. W. (2d) 116, this court stated:

"Counsel for the parties have a distinct obligation to aid in the preparation of special verdicts and to voice objection to the form of questions, if such questions are objectionable, when it will afford an opportunity to the trial court to correct them. Counsel may not accept the language of the trial court as used in the special verdict without objection, wait and see whether the answers of the jury are satisfactory and, if not, then for the first time complain about the phraseology upon appeal."

Sec. 270.28, Stats., provides as follows:

"When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto.*"

In the instant case if counsel for Benjamin desired a question to be submitted in the special verdict regarding the amount due the plaintiff Smith upon the cause of action alleged in plaintiff's complaint, counsel should have requested such question. We consider that the failure of counsel to

make such request constituted a waiver of the provision of sec. 270.29, Stats., that the jury must assess plaintiff's damages. Therefore, the trial court had the right to fix the amount of plaintiff's recovery in this case under the provision of sec. 270.28.

*By the Court.*—Judgment affirmed.